Daniel Berko – SBN 94912
LAW OFFICE OF DANIEL BERKO
819 Eddy St.
San Francisco, CA 94019
Telephone: (415)771-6174

Attorney for Plaintiff,
TAMARA DOUKAS

**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**DIVISION OF SAN FRANCISCO**

TAMARA DOUKAS, an individual,

Plaintiff,

vs.

COUNTY OF SAN MATEO, a public entity, PENINSULA HUMANE SOCIETY, a private non-profit organization, DEBI DENARDI, an individual, KIM HADDAD, an individual, KKH INC, a private entity, SPIKE REAL STATE, a private entity and DOES 1 through 50, inclusive,

Defendants.

Case No.: 08 2336 SI

**DECLARATION OF CARLOS JATO IN SUPPORT OF PLAINTIFF'S OPENING BRIEF RE JURISDICTION**

**Hearing Date/Time:** October 3, 2008 9:00 a.m.
**Hearing Judge: Hon.** Susan Illston

I, Carlos Jato declare:

1. That I am a Spanish citizen, residing in the United States of America for one year so far.
2. That I worked as a lawyer in Spain and now work at the Law Office of Daniel Berko, as a paralegal. In that capacity, I work and maintain the records of discovery received from the Defendants in this action and in the state action, TAMARA DOUKAS v. COUNTY OF SAN MATEO et al CIV461009 (the "State Action").

3. In the State Action, Plaintiff propounded discovery to defendant Peninsula Humane Society (hereinafter "PHS") seeking documents relevant to the issues in this case.

4. Defendant PENINSULA HUMANE SOCIETY provided Plaintiff with documents on April 18, 2008 (Bates numbers "PHS000001-PHS000354") as their response to Plaintiff's Demand for Production of Documents Set One.

5. All exhibits attached to this declaration were received by Plaintiff from PHS as part of their document production, except for exhibit "F" which is a courtesy copy of one of the California laws cited in the brief.

6. Exhibit "A" is a true copy of "PHS000224", a Resolution of Reappointment signed by the Judge George A. Miram approving the designation as Humane Officer of Defendant DEBI DENARDI.

7. Exhibit "B" is a true copy of "PHS000117", a summary of the incident, drafted by Defendant Dr. HADDAD, which was also provided by HADDAD in her responses to Plaintiff's Demand for Production of Documents Set One, Bated as "HAD-0078", on April 7, 2008.

8. Exhibit "C" are true copies of "PHS000307-PHS000308", an excerpt of the contract between PHS and the County of San Mateo detailing the agreement between the PHS and the County for PHS to police the County's animal control laws. Plaintiff includes only this excerpt instead of the entire contract, as it's undisputable that this is part of the contract between Defendants and the contract is lengthy and not needed for this motion.

9. Exhibit "D" is a true copy of "PHS00010", the Post-Seizure Notice purportedly written by Officer DENARDI.

10. Exhibit "E" is a true copy of "PHS000251", a letter from the County of San Mateo demanding defendant Peninsula Humane Society indemnify the County from the claims

made by Plaintiff in this action. (The pending lawsuit referenced in the letter was the State Action, the allegations are essentially the same as this action.)

11. Plaintiff also attaches as Exhibit "F" of this declaration §14502 of the California Corporations Code. This is provided as a courtesy to the Court as it is discussed in *Brunette v Humane Society of Ventura County* 294 F.3d 1205.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 29, 2008, at San Francisco, California.

CARLOS JATO

**Exhibit "A"**



A

**DEPARTMENT OF ANIMAL CONTROL SERVICES**
**PENINSULA HUMANE SOCIETY**
**12 Airport Blvd., San Mateo, CA 94401 • (650) 340-8200**

## RESOLUTION OF REAPPOINTMENT

We, the Board of Directors of the Peninsula Humane Society & SPCA for the Prevention of Cruelty to Animals, 12 Airport Blvd., San Mateo, California, in a Regular Board Meeting on the 31st day of May, 2005 did, by a majority vote, pass the following Resolution: BE IT HEREBY RESOLVED, That we, by the authority vested in us under Corporations 14502 of the Civil Code of the State of California, do hereby appoint:

**Debi DeNardi**

a citizen of this State, as a Humane Officer of this Corporation and authorize him/her to carry the official badge of this Corporation, Debi DeNardi #20 IN WITNESS THEREOF, We have caused to be affixed hereto the Official Seal of this Corporation on this 31st day of May, 2005.

[signature] Chair

[signature] Secretary

The above appointment is approved by me this 8th day of June, 20 05

[signature]
Judge of the Superior Court of the State of California, in and for the County of San Mateo

I, Debi DeNardi #20 do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic: that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

I do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of California, and that I will faithfully discharge the duties of the office of Humane Officer according to the best of my abilities.

OFFICER'S SIGNATURE
[signature]

Sworn and subscribed before me this 3RD day of November, 20 05.

[signature]
Clerk of the Superior Court of the State of California, in and for the County of San Mateo

**Exhibit "B"**

# MEDIC NOTE TEMPLATE INFO ATION

8

**Patient:** 242 KODIAK
**Species:** CANINE **Breed:** ALASKAN MALAMUTE
**Age:** 13 Yrs. 2 Mos. **Sex:** Male **Weight:** 81.5 pounds
**Date:** 08/02/2006 **Staff:** KH Kim K. Haddad DVM
**Status:**

**Comments**

2:40 pm Consulted with HU after she examined and began to treat Kodiak. She expressed concerns about the dog and felt the owner was in denial and not capable of grasping the severity of the dogs condition. She said she discussed euthanasia with the owner but felt the owner was not really hearing what she said. Shortly thereafter, a veterinary technician came upstairs and expressed concerns about the dog and said that the owner was not understanding the severity of the situation. I went to evaluate the dog.
S: The dog was in lateral recumbancy on the treatment room floor. He was receiving IV fluids and had received IV antibiotics. No other medications had been administered. Blood was collected for PCV/TP.
O: T: 104; MM:tacky, pale. HR: 160; rapid shallow respiration, abdominal effort to respiration. Dog was vocalizing and had intermittent agonal breaths. Significant muscle atrophy of rear legs. Dog had malodorous tarry looking feces caked around perineum, dribbling urine. Fecal hemaoccult: strong positive. Lung sounds harsh-no detectable murmur. Foxtail tract lateral thorax area.
Asked O to come into treatment room and told her I felt the dog was very ill with a very grave prognosis and suggested she consider euthanasia as I felt he was suffering and actually looked like he was dying. During this time 12 mg Torbugesic was administered IV. Clinical signs of pain reduced slightly, but dog still clearly very uncomfortable. Vitals remained unchanged. O insisted that the dog is fine and that he is suffering from gas due to the chicken livers she had given him earlier; She indicated that he was fine at 12:30pm that day. She had indicated otherwise earlier saying that he had been having difficulty breathing, was not walking, had diarrhea and V, and that she slept outside with him last night because he was not doing well. The collective opinion of the two present DVM's and the medical notes and recommendation of another DVM that had recently examined Kodiak was that his QOL was very poor and that the humane thing to do is to euthanize him. O again expressed that he was perfectly normal earlier and that it's just gas. Suggested to her that gas would not cause such severe signs and make him pale, dehydrated and unable to walk. I recommended euthanasia. She continued to say he was fine and wanted to see if he got better with the antibiotics. She wanted to know what was wrong with him--I did tell her that I did not have a definitive diagnosis for her, but that my opinion was based on his current presentation, his history over the past month and the recommendations of MW on her last exam of Kodiak. Our presumptive diagnosis was diffuse neoplasia of either GI or hepatic origin.
At this time I called Debbie Denardi of Animal Control to get her suggestion on how to handle this situation. Officer Denardi came down and I briefed her on the case. She went in and had a discussion with Ms. Doukas and tried to talk to her about his QOL. She stayed with Ms. Doukas while she called her father and he came down. Over the next 2 hours Ms. Doukas and her father and Officer Denardi evaluated and discussed Kodiak. Mr. Doukas seemed to understand that Kodiak was suffering, and tried to impress this upon his daughter. He asked if we could put him in a coma for the night and see how he does in the morning. I said that I could and would not do that. We discussed running additional tests, I stated we could run all sorts of tests, but that I felt we should evaluate Kodiak as he currently presents and need to recognize that he is sufferting and that we can end his suferring humanely. When it bacame clear that Ms. Doukas was not going to authorize euthanasia, Officer Denardi advised Mr. Doukas that he had 30 minutes to either decide to euthanize Kodiak at SMAH, or she was going to take him to PHS for euthanasia because the dog is clearly suffering and that she was confiscating the dog. Shortly thereafter, the owner's mother came done and tried to talk with her daughter. She called MW to get her opinion. MW also spoke with Ms Doukas and Mr Doukas. Mr and Mrs Doukas seemed to agree that it was time to euthanize Kodiak and they tried to get the daughter to accept this sad reality. At 5:30pm Officer Denardi indicated that it was time for them to decide where Kodiak would be euthanized. Shortly thereafer, I administered 12 mls Euthasol IV. Kodiak passed peacefully at 6:00pm. Ms. Doukas aid with Kodiak for 30 minutes and then the owners took Kodiak and left to bury him at home.

PHS000117

**Exhibit "C"**

# EXHIBIT C

## ANIMAL CONTROL FEES

The following are Animal Control Fees as described in Section "C", Paragraph 2 of the Agreement, to be charged to the party taking responsibility and collected by Contractor for the service and to be paid to the County by Contractor:

I. Redemption Charges

a) Impound Charges and Board Costs

For all animals except wildlife, unless such wildlife is legally under permit for possession by a private citizen, including Vincent Bill Unaltered impound fees.

b) Transportation/Trailering Costs

Equine, Swine, Bovine, Sheep, Goats, and any other animals Contractor deems advisable to move by trailering.

c) Private Property animal rescue costs.

II. Miscellaneous Charges

a) Surrender animal fees

b) Dead animal pick-up and disposal fees in public areas

c) Euthanasia fees



        d)        Trap rental

        e)        Adoption Fees, with the exception of costs associated with implantation of micro-chips and $5.00 per adoption fee to be retained by the Contractor.

        f)        Dead animal pick-up on private property

III.     Citation Clearance

IV.     Property Inspections

V.     Animal License fees

The above fees are set by Ordinance or Resolution of the responsible City or County. There may be certain services that Contractor performs for which no fee has been determined. In these circumstances, County and/or the respective City shall determine fees to be charged to the responsible party.

**Exhibit "D"**

**DEPARTMENT OF ANIMAL CONTROL SERVICES**
**PENINSULA HUMANE SOCIETY**
**12 Airport Blvd., San Mateo, CA 94401 • (650) 340-8200**

## POST-SEIZURE NOTICE

Case # 06-091986 Date 8-2-06 Time 5:30 p.m.

**Under the authority of Penal Code Section 597.1, the animal(s) described below was/were seized in violation of the following Penal Code:**

CODE SECTION AND DESCRIPTION: 597(b) inadequate care and attention.

ANIMALS SEIZED FROM: (ADDRESS AND LOCATION) San Mateo Animal Hospital, 2320 Palm Ave, San Mateo

ANIMALS DESCRIPTION(S) Canine, Alaskan Malamute, 13 years, 2 months, male "KODIAK"

CIRCUMSTANCES: Geriatric dog - failing. Haddad DVM & Ulla DVM both recommend euthanasia - owner refused.

- STATEMENT: The owner or person authorized to keep the animal(s) or his/her agent may request a post-seizure hearing by returning the enclosed declaration within 10 days, including holidays/weekends, of the NOTICE date. Return the declaration by personal delivery or mail.

- STATEMENT: Costs for care/treatment of animal(s) properly seized are liens against the animal(s). No animal will be returned until liens are paid. Failure to request or attend a scheduled hearing shall result in liability for the costs.

- STATEMENT: Pursuant to Civil Code 1834.5, animals will be deemed abandoned 14 days after notification of seizure and shall become the property of the Peninsula Humane Society. All fees and costs for care and treatment are considered liens and are due and payable in full at the time of release.

OFFICER'S SIGNATURE AND BADGE # [signature] #20 EXTENSION # 320

DENARDI

**Exhibit "E"**

E

COUNTY COUNSEL
Thomas F. Casey III

ASSISTANT COUNTY COUNSEL
Michael P. Murphy

CHIEF DEPUTIES
John C. Beiers
Brenda B. Carlson

COUNTY COUNSEL
COUNTY OF SAN MATEO
Hall of Justice and Records • 6th Floor
400 County Center • Redwood City, CA 94063-1662
Telephone: (650) 363-4250 • Facsimile: (650) 363-4034
*Please respond to: (650) 363-4749*

DEPUTIES
Kathryn E. Alberti
Rebecca M. Archer
Aimee B. Armsby
Deborah Penny Bennett
Peter K. Finck
Timothy J. Fox
Porter Goltz
Leigh Herman
Judith A. Holiber
Kimberly A. Marlow
John D. Nibbelin
Paul A. Okada
Mary K. Raftery
David A. Silberman
William E. Smith
Miruni Soosaipillai
V. Raymond Swope III
Lee A. Thompson
Eugene Whitlock
Carol L. Woodward

March 14, 2007

*Via E-Mail (kwhite@peninsulahumanesociety.org) and U.S. Mail*

Ken White, President
Peninsula Humane Society & SPCA
12 Airport Blvd
San Mateo, CA 94401

*Re: Tender Pursuant to Agreement of: Doukas v. County of San Mateo, CIV 461009 and Wherry v. County of San Mateo, CIV 461010*

Dear Mr. White:

I write to follow up on my conversation yesterday with your attorney Amy Briggs. During that call this Office informed Ms. Briggs of our intent to tender the above-captioned cases to PHS for both defense and indemnification. She asked that we put the request in writing.

Accordingly, the County hereby formally tenders to PHS for both defense and indemnification *Doukas v. County of San Mateo, et al.*, CIV 461009 and *Wherry v. County of San Mateo, et al.*, Civ. 461010 pursuant to Section D. **GENERAL PROVISIONS**, subsection 3 **Hold Harmless and Indemnification** of our Animal Control Services and Shelter Services Agreement. I have attached copies of the *Wherry* complaint and the amended *Doukas* complaint for your reference. The *Wherry* and original *Doukas* complaints were both served on February 22, 2007. The amended *Doukas* complaint was served on March 13, 2007.

This Office had begun researching a demurrer with respect to the County and would be happy to share that research with your counsel and provide additional assistance where appropriate. We would also ask that you keep this Office current with respect to all material case developments, including but not limited to whether your insurance carrier will be appointing independent counsel for the County. As to both, please have your counsel contact the undersigned at their convenience.

If you have any questions or concerns regarding this letter, please let me know as soon as possible.

Very truly yours,

THOMAS F. CASEY III, COUNTY COUNSEL

By: [signature]
David A. Silberman, Deputy

TFC:DAS/cc

cc: Amy Briggs (via abriggs@steefel.com)

L:\CLIENT\A_DEPTS\ANIMAL\2007\PHS Tender Letter.doc

**Exhibit "F"**

f

**14502.** (a) (1) (A) (i) On and after July 1, 1996, no entity, other than a humane society or society for the prevention of cruelty to animals, shall be eligible to apply for an appointment of any individual as a level 1 or level 2 humane officer, the duty of which shall be the enforcement of the laws for the prevention of cruelty to animals.

(ii) On and after July 1, 1996, only a person who meets the requirements of this section may be appointed as, or perform the duties of, a humane officer.

(iii) Any person appointed as a humane officer prior to July 1, 1996, may continue to serve as a humane officer until the expiration of the term of appointment only if the appointing agency maintains records pursuant to subparagraph (C) documenting that both the appointing agency and the humane officer meet the requirements of this section.

(B) Each humane society or society for the prevention of cruelty to animals that makes application to the court for the appointment of an individual to act as a level 1 or level 2 humane officer for the humane society or society for the prevention of cruelty to animals shall provide with the application documentation that demonstrates that the person has satisfactorily completed the training requirements set forth in subdivision (i).

(C) Each humane society or society for the prevention of cruelty to animals for which an individual is acting as a level 1 or level 2 humane officer shall maintain complete and accurate records documenting that the individual has successfully completed all requirements established in this section and shall make those records available, upon request, to the superior court, the Attorney General, or any entity duly authorized to review that information, including the State Humane Association of California. The records shall include the full name and address of each level 1 or level 2 humane officer.

(2) Any corporation incorporated for the purpose of the prevention of cruelty to animals that possesses insurance of at least one million dollars ($1,000,000) for liability for bodily injury or property damage may, six months after the date of its incorporation and by resolution of its board of directors or trustees duly entered on its minutes, appoint any number of persons, who shall be citizens of the State of California, as humane officers, provided that the individuals to be appointed have met the training guidelines set forth in subdivision (i).

(3) Each appointment of a humane officer shall be by separate resolution. The resolution shall state the full name and address of the appointing agency, the full name of the person so appointed, and the fact that he or she is a citizen of the State of California, and shall also designate the number of the badge to be allotted to the officer.

(b) The humane society or society for the prevention of cruelty to animals shall recommend any appointee to the judge of the superior court in and for the county or city and county in which the humane society is incorporated, and shall deliver to the judge a copy of the resolution appointing the person, duly certified to be correct by the president and secretary of the corporation and attested by its seal, together with the fingerprints of the appointee taken on standard 8X8-inch cards, proof of the society's proper incorporation in compliance with Part 9 (commencing with Section 10400) of Division 2, a copy of the society's liability for bodily injury or property damage insurance policy in the amount of at least one million dollars ($1,000,000), and documentation establishing that the appointee has satisfactorily completed the training requirements set forth in this

section.

(c) The judge shall send a copy of the resolution, together with the fingerprints of the appointee, to the Department of Justice, which shall thereupon submit to the judge, in writing, a report of the record in its possession, if any, of the appointee. If the Department of Justice has no record of the appointee, it shall so report to the judge in writing.

(d) Upon receipt of the report the judge shall review the matter of the appointee's qualifications and fitness to act as a humane officer and, if he or she reaffirms the appointment, shall so state on a court order confirming the appointment. The appointee shall thereupon file a certified copy of the reviewed court order in the office of the county clerk of the county or city and county and shall, at the same time, take and subscribe the oath of office prescribed for constables or other peace officers.

(e) The county clerk shall thereupon immediately enter in a book to be kept in his or her office and designated "Record of Humane Officers" the name of the officer, the name of the agency appointing him or her, the number of his or her badge, the name of the judge appointing him or her, and the date of the filing. At the time of the filing the county clerk shall collect from the officer a fee of five dollars ($5), which shall be in full for all services to be performed by the county clerk under this section.

(f) All appointments of humane officers shall automatically expire if the society disbands or legally dissolves. In addition, all appointments of humane officers shall automatically expire within three years from the date on which the certified copy of the court order was filed with the county clerk. Officers whose appointments are about to expire may only be reappointed after satisfactorily completing the continuing education and training set forth in this section.

(g) (1) The corporation appointing an officer may revoke an appointment at any time by filing in the office of the county clerk in which the appointment of the officer is recorded a copy of the revocation in writing under the letterhead of the corporation and duly certified by its executive officer. Upon the filing the county clerk shall enter the fact of the revocation and the date of the filing thereof opposite the name of the officer in the record of humane officers.

(2) Notwithstanding paragraph (1), a revocation hearing may be initiated by petition from any duly authorized sheriff or local police agency or the State Humane Association of California. The petition shall show cause why an appointment should be revoked and shall be made to the superior court in the jurisdiction of the appointment.

(h) The corporation or local humane society appointing the humane officer shall pay the training expenses of the humane officer attending the training required pursuant to this section.

(i) (1) (A) A level 1 humane officer is not a peace officer, but may exercise the powers of a peace officer at all places within the state in order to prevent the perpetration of any act of cruelty upon any animal and to that end may summon to his or her aid any bystander. A level 1 humane officer may use reasonable force necessary to prevent the perpetration of any act of cruelty upon any animal.

(B) A level 1 humane officer may make arrests for the violation of any penal law of this state relating to or affecting animals in the same manner as any peace officer and may also serve search warrants.

(C) A level 1 humane officer is authorized to carry firearms while

exercising the duties of a humane officer, upon satisfactory completion of the training specified in subparagraph (D) and the basic training for a level 1 reserve officer by the Commission on Peace Officer Standards and Training pursuant to Section 13510.1 of the Penal **Code**.

(D) A level 1 humane officer shall, prior to appointment, provide evidence satisfactory to the appointing agency that he or she has successfully completed courses of training in the following subjects:

(i) At least 20 hours of a course of training in animal care sponsored or provided by an accredited postsecondary institution or any other provider approved by the California Veterinary Medical Association, the focus of which shall be the identification of disease, injury, and neglect in domestic animals and livestock.

(ii) At least 40 hours of a course of training in the state humane laws relating to the powers and duties of a humane officer, sponsored or provided by an accredited postsecondary institution, law enforcement agency, or the State Humane Association of California.

(E) A person may not be appointed as a level 1 humane officer until he or she has satisfied the requirements in Sections 1029, 1030, and 1031 of the Government **Code**. A humane society or society for the prevention of cruelty to animals shall complete a background investigation, using standards defined by the Commission on Peace Officer Standards and Training as guidelines for all level 1 humane officer appointments.

(F) In order to be eligible for reappointment, a level 1 humane officer shall complete ongoing weapons training and range qualifications at least every six months pursuant to subdivision (s) of Section 830.3 of the Penal **Code** and shall, every three years, complete 40 hours of continuing education and training relating to the powers and duties of a humane officer, which education and training shall be provided by an accredited postsecondary institution, law enforcement agency, or the State Humane Association of California.

(G) (i) Notwithstanding any other provision of this section, a level 1 humane officer may carry firearms only if authorized by, and only under the terms and conditions specified by, his or her appointing agency.

(ii) Notwithstanding any other provision of this section, a level 1 humane officer shall not be authorized to carry firearms unless and until his or her appointing agency has adopted a policy on the use of deadly force by its officers and the officer has been instructed in that policy.

(2) (A) A level 2 humane officer is not a peace officer, but may exercise the powers of a peace officer at all places within the state in order to prevent the perpetration of any act of cruelty upon any animal and to that end may summon to his or her aid any bystander. A level 2 humane officer may use reasonable force necessary to prevent the perpetration of any act of cruelty upon any animal.

(B) A level 2 humane officer may make arrests for the violation of any penal law of this state relating to or affecting animals in the same manner as any peace officer and may serve search warrants during the course and within the scope of employment, upon the successful completion of a course relating to the exercise of the police powers specified in Section 832 of the Penal **Code**, except the power to carry and use firearms.

(C) A level 2 humane officer is not authorized to carry firearms.

(D) A level 2 humane officer shall, prior to appointment, provide evidence satisfactory to the appointing agency that he or she has

successfully completed courses of training in the following subjects:

(i) At least 20 hours of a course of training in animal care sponsored or provided by an accredited postsecondary institution or any other provider approved by the California Veterinary Medical Association, the focus of which is the identification of disease, injury, and neglect in domestic animals and livestock.

(ii) At least 40 hours of a course of training in the state humane laws relating to the powers and duties of a humane officer, sponsored or provided by an accredited postsecondary institution, law enforcement agency, or the State Humane Association of California.

(E) In order to be eligible for reappointment, a level 2 humane officer shall, every three years, complete 40 hours of continuing education and training relating to the powers and duties of a humane officer, which education and training shall be provided by an accredited postsecondary institution, law enforcement agency, or the State Humane Association of California.

(j) Every humane officer shall, when making an arrest, exhibit and expose a suitable badge to be adopted by the corporation under this title of which he or she is a member which shall bear its name and a number. Uniforms worn by humane officers shall prominently display the name of the appointing agency. Humane officer uniforms shall not display the words "state" or "California," unless part of the appointing agency's incorporated name.

(k) Any person resisting a humane officer in the performance of his or her duty as provided in this section, is guilty of a misdemeanor. Any person who has not been appointed and qualified as a humane officer as provided in this section, or whose appointment has been revoked as provided in this section, or whose appointment, having expired, has not been renewed as provided in this section, who shall represent himself or herself to be or shall attempt to act as an officer shall be guilty of a misdemeanor.

(l) No humane officer shall serve a search warrant without providing prior notice to local law enforcement agencies operating within that jurisdiction.

(m) Any humane society, society for the prevention of cruelty to animals, or person, who knowingly provides a court with false or forged documentation for the appointment of a humane officer, is guilty of a misdemeanor and shall be punished by a fine of up to ten thousand dollars ($10,000).

(n) A humane society or a society for the prevention of cruelty to animals shall notify the sheriff of the county in which the society is incorporated, prior to appointing a humane officer, of the society's intent to enforce laws for the prevention of cruelty to animals. Humane societies or societies for the prevention of cruelty to animals incorporated and enforcing animal cruelty laws prior to January 1, 1996, that intend to continue to enforce those laws, shall notify the sheriff of the county in which the society is incorporated by March 1, 1996.

(o) Except as otherwise provided by this section, a humane officer shall serve only in the county in which he or she is appointed. A humane officer may serve temporarily in a county other than that in which he or she is appointed if the humane officer gives notice requesting consent to the sheriff of the county in which he or she intends to serve, and acquires consent from the sheriff of the county in which he or she intends to serve, or from a person authorized by the sheriff to give that consent. A sheriff shall promptly respond to any request by a humane officer to serve in his or her jurisdiction and any request shall not be unreasonably denied.