Daniel Berko – SBN 94912
LAW OFFICE OF DANIEL BERKO
819 Eddy Street
San Francisco, CA 94109

Telephone: (415) 771-6174
Facsimile:  (415) 474-3748

Attorney for Plaintiff TAMARA DOUKAS

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISCTRICT OF CALIFORNIA

DIVISION OF SAN FRANCISCO

| | |
|---|---|
| TAMARA DOUKAS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN MATEO, a public entity, PENINSULA HUMANE SOCIETY, a private non-profit organization, DEBI DENARDI, an individual, KIM HADDAD, an individual, KKH INC, a private entity, SPIKE REAL STATE, a private entity, and DOES 1 through 50, inclusive,<br><br>Defendants. | CV 08 2336 SI<br><br>SHOW CAUSE OPENING BRIEF RE JURISDICTION<br><br>Date: October 3, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Susan Illston<br><br>JURY TRIAL DEMANDED BY PLAINTIFF |

## INTRODUCTION

*Brunette v. Humane Society of Ventura County* 294 F.3d 1205 (2002 9th Cir.). amended on denial of rehearing, certiorari denied 123 S.Ct. 902, 537 U.S. 1112, 154 L.Ed.2d 786 (hereafter "*Brunette*")

*Fuller v. Vines* (9th Cir. 1994) 36 F.3d 65 (hereafter "*Fuller*").

The court need little else than the above two cases to answer every question it has regarding jurisdiction of this case.

**SHOW CAUSE PLAINTIFF'S OPENING BRIEF RE JURISDICTION**
- 1 -

## UNDERSTANDING THE COURT'S DIRECTIVE

Plaintiff sincerely appreciates the court setting this matter for an early jurisdictional hearing, and even more so because the Court's stated reason was to protect the parties from the very serious consequences of a belated discovery that the court lacked jurisdiction after what could be a great deal of money had already been spent. The complaint clearly alleges federal question jurisdiction since it has a cause of action for violation of 42 USC 1983. Thus, Plaintiff interprets the Court's order to mean that the Court wants her to show she has a colorable 1983 claim. A federal claim is not "colorable" if it ". ... is wholly insubstantial and frivolous." [See *Bell v. Hood* (1946) 327 US 678, 682-683) The Court already has the allegations in the Complaint. Accordingly, she will present evidence in the form of her declaration and perhaps most importantly, records of the Defendants, documents hand written by Defendant Denardi, records of Dr. Haddad, letters from one the County to Defendant Peninsula Humane Society ("PHS"), an excerpt of a contract between the County and PHS, and court orders under California's statutory scheme that allow Humane societies to police certain animal related statutes and ordinances with officers who have all the powers of a full-fledged California peace officer, although not actually appointing them as California peace officers. ( *Cal. Corp.Code* § 14502)

**NO REASONED ARGUMENT IS POSSIBLE THAT DENARDI, THE PHS OFFICER, WAS NOT ACTING UNDER COLOR OF LAW AT ALL TIMES RELEVANT TO THIS CASE**

In *Brunette*, the Ninth Circuit rightly treats as a given hardly worthy of discussion that a Humane Society officer acts under color of law and specifically so for section 1983 liability.

" In June 1995, concerned citizens reported to the Humane Society that Brunette was "selling cats that looked sick, with eyes matted shut and covered in flies and

feces." The Humane Society was created by special California statute (sic),[1] and it engages in a quasi-public function. Cal. Corp.Code § 14502. Humane Society officers are invested with authority to investigate reports of animal cruelty, impound animals, place liens on property, and bring criminal charges against citizens. Id. **The Humane Society and its officers are state actors for the purposes of § 1983.** (Emp. added) *Brunette* at 1208 (emp. added)

Denardi's authority derives from her appointment by a Superior Court judge to enforce California and San Mateo laws as an employee of PHS. (See exh. "A" to the Declaration of Carlos Jato (hereafter "Jato Declaration). It is undisputed that she was present at the hospital in her capacity as a Humane Officer. (See e.g. Jato. Dec. exh. "D").

If PHS, Denardi and the County continue to assert that Denardi was not acting under color of law, sanctions under Rule 11 will be warranted because such a claim is frivolous. Although the County seems to claim that it is not responsible for Denardi's actions, its own contract with PHS belies its defense. See Declaration of Carlos Jato, exh. "C" which is part of the contract between PHS and the County by which PHS performs services. See also exh. E.

*Brunette* also makes clear that Dr. Haddad (and thus her employers, Spike Real Estate and KKH Inc., under the doctrine of respondeat superior are liable under section 1983 because of the Joint Action doctrine. Haddad aided and abetted Denardi and actually killed Kodiak.[2]

> "To be engaged in joint action, a private party must be a "willful participant" with the State or its agents in an activity which deprives others of constitutional rights. Dennis, 449 U.S. at 27, 101 S.Ct. 183. A private party is liable under this theory, however, only if its particular actions are "inextricably intertwined" with those of the government. *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir.1996); *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir.1989) (necessitating a showing of "substantial cooperation" between the private party and the State)." *Brunette,* at p. 1212.

---

[1] Actually, the referenced statute discusses the powers of the Humane Society to enforce state and local law. The societies are formed pursuant to Corporations Code 10400. See *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136 (review denied May 14, 2008) for a more complete discussion of Corporations Code 14502.

[2] It is not clear what effect, if any, California Civil Code has on a 1983 action. All Defendants no doubt will argue that the statute applies, but Plaintiff disputes that. What seems almost certain is that it does not purport to extend, even in an action under California Law, to Haddad's physical acts such as killing Kodiak.

It is doubtful that Haddad can assert a colorable non frivolous claim that she was not a Joint Actor.  Assuming she can, *arguendo* it is irrelevant to this court's decision on jurisdiction.

That leaves the question whether Denardi's actions in ordering Kodiak killed arguably qualifies as a violation of Doukas's federal constitutional or statutory rights.  That is the question, but the evidence is much more compelling than that.  The evidence is that there is no doubt that there is a colorable claim, if not a claim established as a matter of law, that Plaintiff's Fourth Amendment constitutional rights were violated

### THERE IS A COLORABLE CLAIM THAT DEFENDANTS VIOLATED THE FOURTH AMENDMENT WHEN THEY KILLED KODIAK

Plaintiff states in her own declaration submitted with this memorandum, what she has said all along.  Defendants killed Kodiak over her objection. The Ninth Circuit in *Fuller* clearly holds that the killing of a dog that poses no imminent danger and who has an owner willing to take possession of it is a violation of the Fourth Amendment.

The Fullers sued police officers of the City of Richman and the City itself for the killing of their pet dog among other claims. Originally they sued for constitutional violations of substantive due process and procedural due process. (p. 66). The defendants moved for summary judgment and while that was pending the Fullers moved to amend their complaint to allege a violation of the Fourth Amendment. The district court granted the summary judgment and denied the motion to amend. *id.*

The appellate Court's statement of the facts was based on the Fuller's evidence since the Court was reviewing a summary judgment.  Those facts showed that the Fullers were in their yard with their pet dog "Champ". As the Richman police officers approached, Champ merely stood up from where he had been lying. (The officers contended he charged them and barked at them). Plaintiffs stated they pleaded with the officers not to shoot Champ and that they could control him. Nonetheless, the officers shot Champ twice, and killed him. *id.*

After the defendants moved for summary judgment, the Fullers sought to amend their complaint to allege "that the officers 'unlawfully' seized their property when they killed Champ… in violation of the Fourth Amendment." At p. 67 The district court granted summary judgment and held the amendment would not sure the deficiencies in the complaint.

One of the issues before the Court was "whether the district court erred in determining that the proposed amended complaint failed to state a cause of action for the seizure of Champ in violation of the Fourth Amendment." The answer ( at p. 67-68) was as follows:

" A. SEIZURE OF THE DOG

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. Seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place. *Soldal v. Cook County*, 506 U.S. 56, ----, 113 S.Ct. 538, 546, 121 L.Ed.2d 450 (1992). A "seizure" of property occurs, within the meaning of the Fourth Amendment, when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

The destruction of property is "meaningful interference" constituting a seizure under the Fourth Amendment, *Jacobsen*, 466 U.S. at 124-25, 104 S.Ct. at 1662-63; *Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir.1994), because the destruction of property by state officials poses as much of a threat, if not more, to people's right to be "secure ... in their effects" as does the physical taking of them. See *Tarpley v. Greene*, 684 F.2d 1, 9 (D.C.Cir.1982). The Fullers' amended complaint alleged that the officers' killing of their dog constituted a Fourth Amendment seizure. A dog is an "effect" or "property" which can be seized. See *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir.1994). The killing of the dog is a destruction recognized as a seizure under the Fourth Amendment, and thus, the district court abused its discretion when it denied the Fullers' motion to amend on the grounds that the shooting of the dog was not a cognizable claim under the Fourth Amendment.

We conclude that the Fullers have adequately alleged a cause of action under the Fourth Amendment for the killing of their dog in the proposed amended complaint, and therefore, the motion to amend should have been granted. The affidavits submitted by the Fullers alleging the factual background are sufficient to foreclose a summary judgment on the issue. Therefore, we reverse the summary judgment on that ground."

In *Brown v. Muhlenberg* 269 F.3d 205 (3rd Cir. 2001) the Third Circuit addressed whether in the "shooting of a pet dog" a "constitutional violation occurred." (at p. 208). *Brown* was also a summary judgment appeal by the pet owners so the facts were stated by the court in their favor. In *Brown* the Browns were in the process of moving. Immi, their three year old Rottweiler pet, was in their fenced back yard. Although she was not licensed, she was clearly well treated p. 209-210. Unfortunately, unbeknownst to the Browns the fence gate was not closed and Immri wandered out.

An independent witness stated that, the dog "did not display any aggressive behavior towards [Officer Eberly] and never tried to attack him." P.  At this point, Kim Brown facing the dog and that the officer was about to shoot the dog.  She screamed "That's my dog"  and the officer hesitated but then killed the dog including firing five shots, most after she was down and injured.  *Id* at p. 209.

*Brown*, citing *Fuller* stated, "[T]he destruction of property by state officials poses as much of a threat, if not more, to people's right to be `secure... in their effects' as does the physical taking of them*." Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994). *Brown,* at p. 210

The Court in *Brown* states*:*

"we join two of our sister courts of appeals in holding that the killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment. *Fuller*, 36 F.3d at 68; *Lesher v. Reed*, 12 F.3d 148,150-51 (8th Cir. 1994). *Brown,* at p. 210.

The court notes the well-settled rule that a warrantless seizure is per se unreasonable within the meaning of the Fourth Amendment" citing *United States v. Place*, 462 U.S. 696 at 701 (1983). Where the governmental interest justifying a seizure is sufficiently compelling and the nature and extent of the intrusion occasioned by the seizure is not disproportionate to that interest, the seizure may be reasonable even though effected without a warrant. (at p. 210)

While the Court stated that if a pet imposes an imminent danger even killing it could be justified, but when "it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody" killing the dog is a violation of the Fourth Amendment. In fact, even though he was at large and unlicensed, the Court found that the office had not established qualified immunity because it was so clear that killing the dog was unconstitutional. (Brown, at p. 211-212.)

In *Andrews v. City of West Branch*, 454 F.3d 914 (8th Cir. 2005), the Court stated:

> "Other circuits have held that an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful. See *Brown*, 269 F.3d at 210-11; *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994).

In *Andrews*, the police killed the wrong dog, although it was loose and did not have its license on. The Eighth Circuit held that a reasonable police officer could not believe he had the right to kill a dog " 'who posed no imminent danger and whose owners were know, available, and desirous of assuming custody.' " (citing *Brown* at p. 211—212).

Kodiak never posed a danger to anyone. Whatever Haddad and Denardi's beliefs about his state of health, they had no power to seize and kill him when he had an active involved owner ready, willing, and able to provide him excellent care and attention. When they did so, they abused state power and clearly violated the Fourth Amendment.

## CONCLUSION

The Court not only clearly has jurisdiction over this case the "color of law" prong of section 1983 is met as a matter of law.  It may well be that Plaintiff can establish as a matter of law that her constitutional rights were clearly violated, but at a minimum, she presents a colorable claim.

1 | Dated: August 29, 2008

          /S/
DANIEL BERKO, Attorney for Plaintiff
TAMARA DOUKAS